## Weaver *versus* Lynch.

It is a well settled rule of law that if an obligor induce a person to take an assignment of his bond, by admitting the justice of the debt or declaring that he has no defence, he cannot afterwards deny it to the prejudice of the assignee.

In order to create an equitable estoppel upon the obligor, it is necessary for the assignee to prove, not only that he took the assignment, but that he paid a valuable consideration for it.

The holder must also prove that the admission of the obligor was made *before* the assignee expended his money in purchasing the bond.

If the assignee allege that he held the assignment of the notes *conditionally*, with the right to return them in case the obligor should allege any defence, he must prove it; his assertion of it to the obligor in making inquiry of him is not proof of the fact.

ERROR to the Common Pleas of *Fayette county*.

This suit was brought on three several single bills, signed and sealed by John Weaver, payable to Henry J. Ritenour or order, amounting in all to $557, and assigned by Ritenour to John W. Lynch. These notes were given by Weaver to Ritenour in part payment of a tract of land purchased from Ritenour on the 30th of April, 1849. At the time of the purchase there was a judgment against Ritenour, which was a lien on the land; upon which a *scire facias* was afterwards issued and Weaver summoned as terre tenant, and judgment entered thereon on the 12th of June, 1852, for $614.77, which remained unsatisfied.

The plaintiff then called Daniel Sharpneck, and proved by him as follows:—

"Mr. Lynch got me to attend to an arrangement which he said he had made with Mr. Weaver, at the October election in 1852. I called upon Mr. Weaver, to arrange the matter—to give bail for the money—that he could not pay the money—but would give bail in two weeks. I was to give to the middle of March, if he would satisfy me that the money would come without suit—men that would be prompt—said he was not prepared for it on that day—but would give in a couple of weeks. He said that Lynch had proposed the same thing to him—said they were all right but $105 or $106 which he had paid as a credit on the notes. Never saw him till November 3, after the presidential election. He

[Weaver *v.* Lynch.]

then refused to go into the arrangement, that there was a judgment in favour of Brownfield. I asked why he did not tell Lynch that—said he had forgot it.

"This last fall I went to see Mr. Weaver, at the request of Lynch, and if it was time he wanted to give it to him. Weaver said he could ‸not tell anything about it till he would see his attorneys.

"I asked him then; why he told Lynch that they were all right. He said he had, and whether Lynch had not told him if they were not right he, Lynch, would return them to Ritenour. Weaver said he had. I asked him if he had not said to him, Weaver, that if there was to be any quarrelling about it, he wanted to know it, that he could return them to Ritenour. He said yes, that he had, but that he had forgotten about this judgment, and did not know about the same."

The Court below (GILMORE, P. J.) charged the jury: "That if the evidence of Sharpneck was believed, it precludes any defence which existed prior to the assignment of the note, whether Weaver knew of the defence or not. That it was not necessary to prove that Lynch actually paid valuable consideration for the assignment. There is no evidence that he is an assignee without consideration." Verdict in favour of plaintiff for $614.77.

Errors assigned : The Court erred in charging the jury :—

1. That if the evidence of Sharpneck was believed, it precludes any defence that existed prior to the assignment of the note.

2. That it was not necessary to prove that Lynch actually paid valuable consideration for the assignment.

3. In throwing the burthen of proof on defendant to show that Lynch was an assignee without consideration.

*Patterson*, for plaintiff in error.—The defendant claims that the liens amount to more than these notes, and that he has a good defence. The grantor cannot recover till the encumbrances are removed: 10 *Barr* 74; 1 *Watts* 248; 13 *Ser. & R.* 165. The assignee is in the same situation, and takes it subject to every equity between the parties: 16 *Ser. & R.* 18; 14 *Id.* 306; 1 *Dall.* 23; 1 *P. R.* 29.

The only exception to the principle of these cases is, where the assignee has been induced to part with his money on the representation of the obligor that there was no objection or defence to their payment. In such case he will be estopped. But the assignee must show that these representations were made before the assignment, that he parted with his money relying upon them; and also, that he paid a valuable consideration for the notes.

The Court erred, therefore, in telling the jury it was not neces-

sary for Lynch to prove that he paid a consideration for the assignment.

*J. B. & A. Howell,* for defendants in error.—Surely the Court below committed no error in charging the jury, "that if the evidence of Sharpneck was believed it precluded any defence."

Having induced or encouraged Lynch to purchase the notes, he could make no defence that existed at that time—even though he was ignorant of the matter at the time: 2 *Yeates* 541; 14 *Ser. & R.* 306; 16 *Id.* 21; 1 *P. R.* 24; *Id.* 476; *Addis. Rep.* 155.

Was it necessary for Lynch to prove that he paid a consideration? The plea was payment—the onus was upon the defendant: 3 *Harris* 63; 1 *Barr* 68; 11 *Ser. & R.* 234; 4 *W. & Ser.* 38; 4 *Harris* 497; 5 *Harris* 172.

The opinion of the Court was delivered by

BLACK, J.—This was a suit on several notes given by Weaver to Reitenour for a farm, and assigned by Reitenour to Lynch. The defence was that the farm was encumbered. It is not denied that this would have been an answer to the suit if the notes had remained in the hands of the original holder. But the Court held, on certain facts to be mentioned presently, that the defendant was estopped from setting it up against the assignee.

It is a rule as well settled as it is just, that if an obligor induce a person to take an assignment of his note or bond by admitting the justice of the debt, or declaring that he has no defence, he cannot afterwards deny it to the prejudice of the assignee. But, in order to create this equitable estoppel, it is necessary for the assignee to show not only that he took the assignment, but 'that he paid a valuable consideration for it. If the law were otherwise, an ignorant obligor might easily be trapped into an admission, and a sham assignment might be made for the very purpose of keeping out an honest defence. The assignee must also be able to show that the admission was made *before* he expended his money in procuring the assignment. Anything said afterwards can do him no harm, because it could not be his motive for making the purchase, and therefore it shall not affect the other party by way of estoppel.

In this case there was no evidence to show what consideration was paid for the notes by the assignee, nor whether any at all was given. This made the plaintiff's evidence on that part of the case fatally defective.

But there was another flaw in it. The assignee does not appear to have called on the defendant, or to have heard anything from him about the notes, until after the date of the assignment. Then, however, he told the defendant that he could return the notes and

[Weaver *v.* Lynch.]

would do so if they were not right, and he received for answer that they *were* right. If he had proved that he had them conditionally, with the privilege of returning or keeping them according to his own pleasure, and that he had decided to keep them after the defendant gave him this answer, that would be a complete estoppel. But his mere averment, in a conversation with the defendant, that such was the condition of things, is not sufficient evidence to prove it.

Judgment reversed and *venire de novo* awarded.